# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| TIMOTHY S. MARBURGER, | ) CASE NO. 4:24-CV-480 |
| Plaintiff, | ) |
| | ) JUDGE CHARLES E. FLEMING |
| v. | ) |
| | ) |
| JAMES A. WHETSTONE, *et al.* | ) |
| | ) **MEMORANDUM OPINION AND** |
| Defendants. | ) **ORDER** |

Before the Court is Defendant James Whetstone's ("Whetstone") Motion to Dismiss Plaintiff's Amended Complaint. (ECF No. 17). Also before the Court is the motion of Defendants JT Motor Cars, Inc., MDW Motors, Inc., MW Motors, Inc., WMW Motors, Inc., JJT Motors, Inc., and WMD Motors, Inc. (collectively, the "Car Dealership(s)") to join in Whetstone's motion to dismiss. (ECF No. 16). The Car Dealerships' motion is **GRANTED**. For the reasons stated below, Whetstone's motion must be converted to a motion for summary judgment, and it is **DENIED WITHOUT PREJUDICE**.

I.   FACTUAL BACKGROUND

A. The Parties and their Car Dealerships

Marburger and Whetstone have been business partners for over 25 years. (ECF No. 13, Am. Compl., PageID #189). Together, they are shareholders of six separately incorporated Car Dealerships. (*Id.* at PageID #190–91). Whetstone serves as a director and officer of each Car Dealership, which are Ohio corporations. (*Id.*).

In 2020, Whetstone informally offered to buy Marburger's shares in the Car Dealerships, which Marburger declined. (*Id.* at PageID #193). In 2021, Whetstone reiterated the offer in

1

writing, but Marburger declined again. (*Id.*). Thereafter, Marburger alleges that Whetstone removed Marburger as an officer and director of the dealerships, paid himself substantial bonuses, sheltered and offset the Car Dealerships' material financial losses (the "DELTA") incurred by Whetstone in 2014, and competed with the Car Dealerships by privately selling used cars. (*Id.*).

### B. Share Restriction Agreement

Throughout their 25-year business partnership and ownership of the Car Dealerships, Marburger and Whetstone drafted several corporate documents that shed light on the dispute now before the Court. First, in 1998, the parties signed a Share Restriction Agreement ("SRA") that set forth the terms of selling or transferring the Car Dealerships' shares. (ECF No. 13-1, Ex. A, PageID #217–28). Sections 9, 10, and 11 of the SRA outline the procedures shareholders must follow to transfer or sell their shares, and establish a hierarchy of entities and individuals who have the first right of refusal to those shares.

Section 9 states that a shareholder wishing to sell his shares (the "Selling Shareholder") must either (1) obtain "the unanimous written consent of all the Shareholders" to the sale; or (2) first give "to all the Shareholders and the Company at least 60 days prior written notice (hereinafter referred to as the 'Selling Shareholder's Notice') of his intention to dispose of such shares." (ECF No. 13-1, Ex. A, PageID #220). The Selling Shareholder Notice must "contain the complete terms and conditions of the proposed Disposition, including but not limited to, (i) the name and address of the purchaser or other transferee; (ii) a completely executed copy of the agreement or offer, if any, relating to the proposed Disposition; (iii) the purchase price, if applicable; and (iv) the terms of payment of the purchase price." (*Id.*). Additionally:

> Within the 60-day period, a special meeting of the Shareholders (hereinafter referred to as the "Shareholder's Meeting") shall be held pursuant to 30-days' prior written notice mailed by the Selling Shareholder to each Shareholder setting forth the time, date and place of the Shareholder's

2

> Meeting. At the Shareholder's Meeting all of the Shares subject to an option to purchase in favor of, the Company upon the terms and conditions set forth in the Selling Shareholders' Notice, which option shall be exercised, if at all, at the time of such Shareholder's Meeting.

(*Id.*).

Section 10 provides that, if the company decides not to purchase the shares, "the Remaining Shares shall be offered for sale to, and shall be subject to an option to purchase a proportionate share in favor of, the Shareholders[.]" (*Id.*). According to Section 11, if none of the other shareholders exercise their option to purchase, the Selling Shareholder is then "free to dispose of his Shares that are remaining upon the terms and conditions set forth in the Selling Shareholder's Notice[.]" (*Id.* at PageID #221).

### C. JT Motor Cars, Inc. and the Restated Voting Trust Agreement

According to Marburger, Whetstone transferred or sold shares to his daughters, Karli Datish and Krystie Whetstone, and other unidentified individuals in contravention of the SRA. (ECF No. 13, PageID #209–212). The complaint does not state how many shares each daughter received. (*Id.*). Instead, Marburger attached two voting trust agreements that each contain a schedule of the number of owned and transferred shares. (ECF No. 13-1, PageID #236, #243).

On January 1, 2000, the shareholders of Defendant J.T. Motor Cars, Inc. ("J.T. Motor") signed the first Voting Trust Agreement attached as an exhibit to the SRA. (*Id.* at PageID #229–36). Marburger transferred 56 shares into the Trust, and Whetstone transferred all his 202 shares. (*Id.* at PageID #236). More than eighteen years later, on November 1, 2018, the shareholders terminated the Voting Trust Agreement and signed a new Restated Voting Trust Agreement. (*Id.* at PageID #237–44). Marburger again transferred 56 of his 202 shares to the Trust. Schedule 1 to the Restated Voting Trust Agreement reveals that Whetstone transferred a total of 5 shares (2.5 each) to Krystie and Karli; Krystie transferred 2.5 shares, Karli transferred 2.5 shares, and Whetstone transferred 197 shares into the Voting Trust. (*Id.* at PageID #237). Whetstone is named

3

as Trustee of the Restated Voting Trust. (*Id.*). As Trustee, Whetstone acquired "all of the specified voting and consenting rights in respect of the Shares upon the terms and subject to the conditions set forth in" the Restated Trust Agreement. (*Id.*). Upon its creation, the Trust held (and continues to hold) 258 of the 505 outstanding shares in Defendant J.T. Motor Cars, Inc.[1]

Whetstone also owns two used car dealerships, Car Culture and Patriot Motors, which directly compete with JT Motor Cars, Inc. (ECF No. 13, PageID #198). Marburger asserts that Whetstone uses the bank account, office, and administrative services of JT Motor Cars, Inc., for the benefit of Car Culture and Patriot Motors. (*Id.*). Marburger knows this because he learned that JT Motor Cars, Inc., processes the payroll for employees of Car Culture and Patriot Motors. Marburger asserts that there are likely comingled assets among the three dealerships, and that such sharing of resources was not accounted for or bargained for at arm's-length.

### D. The "DELTA"

The "Delta" losses are $2.4 mil in purportedly unaccounted for and missing funds. (*Id.* PageID #196). In 2015, the Car Dealerships had an accounting firm conduct an internal audit. (*Id.*). During its review, the accounting firm found that Whetstone's management company, Whetstone Motors, Inc. ("Whetstone Management"), had a KeyBank account, which received daily deposits of cash from each Car Dealership. (*Id.*). Whetstone, the sole manager of the Whetstone Management KeyBank account, failed to properly record checks and disbursements and comingled assets between the Car Dealerships and Whetstone Management. (*Id.*). At the 2021 special

---

[1] Defendant JT Motor Cars, Inc. retains 495 shares of capital stock. (ECF No. 13-1, PageID #237).

meeting, the board voted to eliminate these funds, the DELTA, from long-term assets, giving up on ever recovering them. (*Id.*).

The "DELTA" is integral to Marburger's breach of fiduciary duty claims against Whetstone, specifically in Whetstone's alleged mismanagement of the Car Dealerships' finances. Marburger alleges that the financial ramifications of eliminating the "DELTA" from the Car Dealerships' accounting records were unjustly imposed on four of the corporations in which Marburger has an interest, despite affecting five more entities. (*Id.* at PageID #197).

### E.  The March 14, 2022 Special Meeting and the Codes of Regulations

Each Car Dealership is governed by a code of regulations, which Whetstone attached to his motion to dismiss. (ECF No. 17-1, ECF No. 17-2, ECF No. 17-3, ECF No. 17-4, ECF No. 17-5, ECF No. 17-6, ECF No. 17-7). Each code of regulations outlines the procedures for annual and special shareholder meetings, the types and amount of shares, and the election and duties of officers. (*Id.*). Across all the codes of regulations, Section 1 addresses the meeting of shareholders. (*Id.*).  The secretary of the corporation "shall call special meetings pursuant to a resolution of the Board of Directors, or upon the written request of two directors, or by shareholders representing 25% of the shares issued and entitled to vote." (*Id.*). "A written notice stating the date, time, place, and purposes of the meeting of shareholders" must also be sent to each shareholder. (*Id.*).  But the corporations differ in their requirements for providing notice of a special meeting.

The code of regulations governing JT Motor Cars, Inc., MDW Motors, Inc., JJT Motors, Inc., and WMD Motors, Inc. state that the written notice "shall be given either by personal delivery or mail at least five (5) days before the date of the meeting to each shareholder entitled to notice of the meeting." (ECF No. 17-2, PageID #285; ECF No. 17-3, PageID #293; ECF No. 17-6, PageID #317; ECF No. 17-7, PageID # 325). The code of regulations governing MW Motors, Inc.

5

states that the written notice "shall be given either by personal delivery or by mail at least 2 days before the date of the meeting." (ECF No. 17-4, PageID #301). The code of regulations governing WMW Motors, Inc. states that the written notice "shall be given either by personal delivery, by regular U.S. mail, by e-mail, or by fax, at least three (3) days before the date of the meeting[.]" (ECF No. 17-5, PageID #309).

Whetstone, as President, set a special meeting of the directors of the dealerships for March 14, 2022, allegedly without power to do so. (ECF No. 13, PageID #194). On March 8, 2022, each corporation within the Car Dealerships distributed a Notice of Special Meeting of Shareholders and Directors ("the Notice") via U.S. mail, certified mail, and email. (ECF No. 17-8, Ex. G, PageID #333–38). The Notice also provided instructions on how to attend the meeting remotely. (*Id.*). The Notices stated the purposes of the special meeting, which were to appoint directors and officers for the 2022 year, discuss government COVID-19 relief funds, set bonus compensation for key employees for the year 2021, authorize Whetstone, as President, to set key employee compensation and bonuses for the year 2022 and forward, authorize a new K-1 distribution policy, eliminate the "DELTA" from long-term assets, and authorize the adoption of a death benefit. (*Id.*).

According to an email attached to Whetstone's motion to dismiss, on March 8, 2022, Eric Sutch provided the Notices to Marburger, stating: "each of these Notices includes a conference call-in phone number with a corresponding meeting ID and passcode." (ECF No. 17-9, PageID #340). Sutch also wrote that he mailed the Notices to Marburger via regular mail and certified mail through FedEx. (*Id.*). On March 9, 2022, Marburger responded: "Hi Eric, Thanks for sending this. I'm sorry but won't be available on Monday. Tim." (*Id.*).

The complaint states that Marburger did not attend the special meeting because his mother-in-law had died, and the meeting conflicted with her funeral. (ECF No. 13, PageID #195). On

6

March 14, 2022, the Special Meeting of Shareholders and Directors occurred without him. (ECF No. 17-10, Ex. I, PageID #342–64). During the meeting, the shareholders did not re-elect Marburger as director or officer of the Car Dealerships. (*Id.*). The shareholders also undertook the other actions outlined in the Notice, including elimination of the DELTA from the Car Dealerships' books. (ECF No. 13, PageID #196). The shareholders also permitted Whetstone to bonus himself $1,475,000 and employees $2,171,500; the dealerships had never bonused employees to such a significant degree, and had never bonused Whetstone previously, yet this trend continued to 2022, when the dealerships gave out approx. $3 mil in bonuses. (*Id*.).

## II. PROCEDURAL POSTURE

Marburger initiated this suit on March 14, 2024, on his own behalf and derivatively on behalf of the Car Dealerships. (ECF No. 1, Compl., PageID #1–43). Marburger amended his complaint on July 12, 2024 (ECF No. 13, PageID #189). Marburger asserts a minority shareholder "squeeze-out" whereby Whetstone, as president, board member, and shareholder of the Car Dealerships, deprived Marburger of his rights as a shareholder and board member. (*Id.* at PageID #205–14). Marburger's first and second claims allege that Whetstone violated his fiduciary duties of loyalty, good faith, and care to the Car Dealerships and Marburger by misappropriating funds to the detriment of shareholders and manipulating the corporate governance structure to remove Marburger as a director. (*Id.* at PageID #205–09). The third and fourth claims addressed Whetstone's alleged breach of the Share Restriction Agreement when Whetstone transferred or sold shares of a Car Dealership corporation to his daughters, and possibly others, without following the required procedures. (*Id.* at PageID #210–12).

Whetstone moved to dismiss Marburger's amended complaint. (ECF No. 17, Mot. to Dismiss, PageID #254–365). Attached to Whetstone's motion are exhibits, including the code of

7

regulations for each company within the Car Dealership, the Notices, the minutes of the special meeting from March 14, 2022, and the emails between Marburger and Eric Sutch regarding Marburger's absence from the March 14, 2022 Special Meeting. (*Id.* at PageID #284–365). Whetstone avers that Marburger lacks standing to bring his direct claims because fiduciary duty claims are solely derivative in nature. (*Id.* at PageID #266–72). The derivative claims also fail because Marburger did not comply with Fed. R. Civ. P. 23.1 when pleading futility of any efforts he could have made to affect the rescission of his removal as director and officer or collect the funds alleged to have been wrongfully taken by Whetstone from the Car Dealerships. (*Id.* at PageID #273–79). Whetstone argues that Marburger failed to establish an injury associated with his claims. (*Id.* at PageID #272–73). He avers that even if the direct claims are viable, Marburger's harm is not distinct or separate from the harm to the corporation—a requirement for a direct shareholder action. (*Id.* at PageID #286).

In response to Whetstone's motion, Marburger argues that he need not show individualized harm or meet the futility requirement because the Car Dealerships are closely held corporations. (*Id.* at PageID #381–83, 386–89). (ECF No. 19, Pl.'s Response, PageID #369). Alternatively, Marburger claims that he established separate and distinct harm because he had a personal interest in the governance and financial deficits of the Car Dealerships, since he personally guaranteed most of the Car Dealerships' loans and/or lines of credit. (*Id.* at PageID #383–386). Procedurally, Marburger states that the Court must convert Whetstone's motion to dismiss to a motion for summary judgment because Whetstone introduced documents outside the pleadings. (*Id.* at PageID #379–81). On reply, Whetstone asserted that the motion to dismiss exhibits were central to Marburger's claim and referenced in his complaint; thus, the Court should consider all the exhibits at the motion to dismiss stage. (ECF No. 20, Def.'s Reply, PageID #402–07).

### III. MOTION STANDARD

A motion to dismiss under Rule 12(b)(6) attacks the complaint by alleging that it "fail[s] to state a claim upon which relief can be granted[.]" FRCP 12(b)(6). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[,] a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than just labels and conclusions." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 545 (2007) (cleaned up) (clarification added).

A court may only reference factual allegations in the pleadings when deciding a motion under Fed. R. Civ. P. 12(b)(6). *Tebault v. United States,* 778 F. Supp. 3d 912, 917 (W.D. Ky. 2025). If a party presents matters outside the pleadings, the court must treat the motion "as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Documents which may be treated as part of the pleadings include "exhibits attached to a Complaint, public records, items appearing in the record of the case, and a motion to dismiss[.]" *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008). The Sixth Circuit only considers "[d]ocuments that a defendant attaches to a motion to dismiss [as] part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Weiner v. Klais & Co., Inc.,* 108 F.3d 86, 89 (6th Cir. 1997) (citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

The Court must assess whether the documents attached to Whetstone's motion to dismiss warrant conversion into a motion for summary judgment. The Court recognizes that it may accept exhibits attached to a motion to dismiss under the *Weiner* standard. Whetstone's argument in his reply brief follows this rule. He asserts that the exhibits are mentioned in Marburger's complaint and are central to Marburger's claims because they "inform or limit Marburger's legal rights," thus

9

allowing the courts to consider the exhibits at the motion to dismiss stage. (ECF No. 20, PageID #403). Whetstone further asserts that the Court may consider the emails in Exhibit H under a motion to dismiss standard because they "'fill in the contours and details of the plaintiff's complaint[.]'" (*Id.* at PageID #404) (citing *Sweeney v. Nationwide Mut. Ins. Co.*, No. 2:20-CV-1569, 2022 WL 874851, *3 (S.D. Ohio Mar. 24, 2022)).

Even so, if a party questions the authenticity, validity, or enforceability of a document, or raises a genuine dispute over the legal sufficiency of a document, the court must consider the issue under a motion for summary judgment. *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 898–99 (S.D. Ohio 2013). Marburger does just this in opposition to Whetstone's motion. As to the email between Marburger and Sutch, Marburger states:

> Whetstone, by including this single email, is proffering to the Court that the email (i) somehow validates the improperly-called Special Meeting; and (ii) is the *sole* document that reflects Marburger's consent to the Special Meeting and his inability to attend. Whetstone's reliance on this unauthenticated email completely ignores whether additional correspondence or discussions occurred *after* transmission of the email regarding the same subject matter of the email.

(ECF No. 19, PageID #379–70).

Whetstone urges the Court to consider the email and other documents attached to his Motion, pointing to *Robins v. Glob. Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 642 (N.D. Ohio 2012) and *Carney v. Univ. of Akron*, 2016 WL 4036726, at *7 n.4 (N.D. Ohio 2016) as representative cases that dictate such a result. However, as Whetstone points out in his reply brief, this Court considered unauthenticated documents there because the plaintiffs did "not question the validity, accuracy or completeness" of those documents. (ECF No. 20, PageID #404). Unlike *Robins* and *Carney*, Marburger directly challenges the completeness of the email.

10

Moreover, there may be no material disputes regarding the document's relevance in a motion to dismiss. *Mediacom Se. LLC v. BellSouth Telecommunications, Inc.*, 672 F.3d 396, 400 (6th Cir. 2012). Material facts affect the outcome of the lawsuit under substantive law. *Rodgers v. Monumental Life Ins. Co.*, 289 F.3d 442, 448 (6th Cir. 2002). The Ohio Revised Code provides that "[t]he attendance of any shareholder or any director at any such meeting without protesting, prior to or at the commencement of the meeting, the lack of proper notice shall be deemed to be a waiver by the shareholder or director of notice of such meeting." Ohio Rev. Code Ann. § 1701.42 (West 2025). In sum, Marburger's lack of objection would waive his right to assert claims regarding improper notice. Thus, the circumstances surrounding Marburger's possible objection are material to his claims.

Both parties proffered contradictory narratives about Marburger's alleged objection. Whetstone cited Exhibit H in stating that Marburger did not object to the Notice. (ECF 17-1, PageID #276) (noting that "Marburger did not even allege that he objected to the Notice as improperly issued (because he did not)"). Whetstone further averred that Marburger's only response to the Notice was that "he was unavailable to attend." *Id*.; (ECF No. 17-9, PageID #340). On the other hand, Marburger stated that he "notified Whetstone that he was unable to attend the Special Meeting, given the short notice of the Special Meeting, and because his mother-in-law had recently passed away and the Special Meeting was around the time of the funeral," and that "Whetstone declined to reschedule the Special Meeting." (ECF No. 13, PageID #195). The Court cannot rule on a dispositive, disputed issue, predicated on material and disputed facts, in a motion to dismiss. As such, Whetstone's motion must be converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

When the Court converts a motion to dismiss into a motion for summary judgment, then "all parties must be given a reasonable opportunity to present all material pertinent to the motion." *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011). Marburger urges the Court, pursuant to Rule 56(d), to permit the parties to engage in discovery before ruling on Whetstone's motion: "Without allowing discovery and '[w]ithout further evidence, the Court has no way to determine' whether the documents proffered by Whetstone 'reflect the entirety' of the relevant record on these material issues." (ECF No. 19, PageID #381) (citing *Cronin v. Kaivac, Inc.*, No. 1:19-CV-758, 2021 WL 2334246, at *3 (S.D. Ohio June 8, 2021)).  The Court notes that Marburger did not submit an affidavit or declaration in support of his request, as Rule 56(d) requires, though the Court will use its discretion to grant the request.

## IV.     CONCLUSION

The Court agrees that discovery is needed in this case before the parties proceed to dispositive motions.  Rule 56(d) permits the Court to deny Whetstone's motion without prejudice to its refiling following discovery.  Fed. R. Civ. P. 56(d)(1).  The Court elects to take that path here. Whetstone's motion to dismiss (ECF No. 17) is therefore **DENIED WITHOUT PREJUDICE**.  A case management conference, which will determine appropriate discovery deadlines and a new dispositive motions deadline, will be set by separate order.

**IT IS SO ORDERED.**

**Date: September 29, 2025**

_____
**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**